## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **WILLIAM BARBARINO, on behalf of himself and all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. _____** |
| **ZYNGA, INC.,** | ) ) | |
| **Defendant.** | ) ) | |

### STATEWIDE CLASS ACTION COMPLAINT

Plaintiff William Barbarino, an adult resident citizen of Gloucester County, New Jersey, on his own behalf and on behalf of all others similarly situated in the state of New Jersey, files this statewide class action complaint against Zynga, Inc.

1.     This state-wide class action seeks recovery of illegal gambling losses by New Jersey residents who played Zynga's illegal online gambling games. Plaintiff seeks, on her own behalf and on behalf of all similarly situated New Jersey residents:

(1) a ruling that Zynga's games violate federal law, and that Zynga's online terms of service set out the terms and conditions under which the illegal gambling is conducted and are therefore unenforceable in a federal court;

(2) a ruling that the online terms of service promulgated by Zynga and the arbitration and delegation provisions contained in the terms of service are each void as violative of New Jersey law;

(3) a determination that provisions in the Zynga Terms of Service that prevent customers from effectively vindicating statutory rights are void and unenforceable.

(4) recovery under the New Jersey gambling loss recovery act, NJRS § 2A:40-5; and

(5) recovery under the New Jersey Consumer Fraud Act.

Plaintiff also seeks on his own behalf losses of New Jersey residents pursuant to NJRS § 2A:40-6 which are not recoverable by class members.

## PARTIES, JURISDICTION, AND VENUE

2.    Plaintiff William Barbarino is an adult resident citizen of Gloucester County, New Jersey, within this district. He played the illegal gambling games described below in this district.

3.    Defendant Zynga, Inc. is a corporation organized under the laws of the state of Delaware, with its principal place of business in San Mateo, California. It does business through online games in the state of New Jersey. It does not have a physical place of business in New Jersey.

4.      The events giving rise to plaintiff's claims occurred in the District of New Jersey, such that venue is proper in this forum pursuant to 28 U.S.C. § 1391(b)(2).

5.      Plaintiff, the plaintiff class, and defendant are citizens of different States, and the aggregated amount in controversy in this class action exceeds $5 million, exclusive of interest and costs. This Court therefore has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

6.      Plaintiff also brings an individual claim with more than $75,000 at issue under New Jersey Revised Statutes § 2A:40-6. Thus, the Court also has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

7.      This Court has personal jurisdiction over Zynga because the company has sufficient minimum contacts to support specific personal jurisdiction in the state, and those contacts are directly related to Plaintiff's claims. See International Shoe Co. v. Washington, 326 U.S. 310 (1945).

8.      Zynga's minimum contacts with the state of New Jersey include ongoing contractual relationships created by the terms and conditions on the Defendant's smartphone applications. Zynga required Plaintiff and all other New Jersey customers to agree to these terms. Both the Third Circuit and the United States Supreme Court, among many others, have found that personal jurisdiction is proper where a defendant "knowingly conducts business with forum state residents via the

site". <u>Toys "R" Us, Inc. v. Step Two, S.A.</u>, 318 F.3d 446, 452 (3d Cir. 2003); <u>see also</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985); <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997). Furthermore, the Western District of Washington applied these principles to find that one of Zynga's competitors, an online gambling business with an identical business model, headquartered outside the United States, purposely availed itself of doing business in the state of Washington, making it subject to personal jurisdiction there:

> Playtika has purposefully availed itself of the privilege of doing business in Washington. Unlike cases involving lone or limited transactions, the record shows that Playtika has used its apps to sell many coins to many users located in Washington See Opp'n, Dkt # 57-2, Ex. 2 at 5-10. In addition, similar to Helicopter Transport Services, Playtika's sales to its users are part of ongoing relationships. 253 F. Supp. 3d at 1129. To turn a profit, Playtika's games rely on at least some users repeatedly running out of coins and then buying more in order to continue playing. Playtika thus "contemplates future consequences" when it sells coins to its users, satisfying the purposeful availment analysis. <u>Burger King</u>, 471 U.S. at 479, 105 S.Ct. 2174.

<u>Wilson v. Playtika, Ltd.</u>, 349 F.Supp.3d 1028, 1035 (W.D. Wash. 2018). The same analysis holds true here, both because of the volume of transactions undertaken by Zynga in New Jersey and the creation of continuing relationships with its customers in the state.

9.      Zynga's contacts with New Jersey also include direct solicitations and other communications, instituted by the company, with customers in New Jersey. These include in-game messages and advertisements sent to players. Further, social

and sweeps casino companies specifically target individuals who spend money on the apps, including by sending them direct, targeted advertisements to play the game, purchase coins, or participate in particular features of the games. See "How social casinos leverage Facebook user data to target vulnerable gamblers," PBS News Hour, available at https://www.pbs.org/newshour/show/how-social-casinos-leverage-facebook-user-data-to-target-vulnerable-gamblers (last accessed July 11, 2025). These communications and advertisements specifically directed by Zynga to particular current and prospective players in New Jersey constitute purposeful contacts with the state.

## RELEVANT FACTS

### A.    Defendant's Gambling Games

10.    Zynga is a game developer that has created games that simulate slot machines and other gambling games, including Wizard of Oz Slots, Hit it Rich, Game of Thrones Slots, Black Diamond Casino and Willy Wonka Casino, which it makes available to the public through apps available on the Apple App Store and Google Play Store.

11.    Zynga's games operate with virtual coins that are available for purchase. These virtual coins cannot be redeemed for real-world currency. However, when users play with and win more coins, the coins won can be used to extend their playing time without having to purchase more coins, and thus users obtain more

amusement, a valuable consideration under New Jersey gambling law. The New Jersey Supreme Court has long held that the ability to play for free is a thing of value under New Jersey law. See Hunter v. Mayor & Council of Teaneck Tp., 24 A.2d 553 (N.J. 1942).

12.    Zynga's games are games of chance that simulate casino gambling such as slot machines. Here is an example of one of defendant's games:



13.    Plaintiff William Barbarino spent money to purchase virtual coins, played Zynga's gambling games, and lost money on the games within the six months preceding the filing of this complaint.

**B.    Defendant's Games Have Gravely Harmed the Class and the State of New Jersey**

14.    The social ills caused by "social casino" and "sweeps casino" games are well-documented. Media reports how gambling addicts spend enormous, and

completely unaffordable, amounts of money on these casino games. One nurse in Houston is reported to play a slot machine game similar to defendant's here for a minimum of two hours a day. (Ex. 1, https://www.nbcnews.com/tech/technews/addicted-losing-how-casino-apps-have-drained-people-millions-n1239604 (last accessed on Aug. 19, 2024)).  Between her and her husband, who plays the game with her, she estimates they have lost $150,000. She asked NBC News to withhold her name "so her family does not find out how much money they have spent on the game." (Id.). She said her and her husband "lie in bed next to each other, we have two tablets, two phones and a computer and all these apps spinning Reel Rivals at the same time. We normalize it with each other." (Id.). This is not an isolated instance.

15.    NBC News spoke to 21 people, including Shellz [the Houston nurse] and her husband, who said they were hooked on the casino-style games and spent significant sums of money. They described feelings of helplessness and wanting to quit but found themselves addicted to the games and tempted by the company's aggressive marketing tactics. "Most of the 21 players wished to remain anonymous, as they were ashamed of their addictions and did not want their loved ones to find out about their behavior." (Id.). For example, a "42-year-old Pennsylvania woman said she felt saddened that she spent $40,000 [on a social casino app that competes with defendant's] while working as an addiction counselor. 'The whole time I was

working as an addiction counselor, I was addicted to gambling and with no hope of winning any money back,' she said." Such problems are only exacerbated by "sweeps casinos," where users have access to gambling games where they can win cash money, and not just additional play-time, twenty-four hours a day, seven days a week.

16.    It is scarcely a defense that "social casino" slot machines do not afford gamblers the opportunity to win real money because the currency in such games consists of "virtual coins" that are only redeemable as additional opportunities to play the games. This is so for at least two reasons. First, those with gambling addictions have been documented to lose thousands of dollars playing these slot machines, to the point of financial ruin and marital strife, even though these gamblers could never win their money back – only the opportunity for additional spins at the slot machine. Secondly, the law in many states, including New Jersey, holds that the opportunity to win additional amusement or playing time is illegal gambling even though the gambler never has the opportunity to win his or her money back. Hunter v. Mayor & Council of Teaneck Tp., 24 A.2d 553 (N.J. 1942).

17.    Anecdotal reports of gambling addictions in connection with social casino and sweeps casino games like defendant's are buttressed by recent scientific studies that confirm that such apps not only appeal to gambling addicts, but have a particular appeal to teenagers. One of the more troubling statistics comes from

studies that show that 30% of users of these games between the ages of 12 and 18 later become regular gamblers. Hollingshead, et al., "Motives for playing social casino games and the transition from gaming to gambling (or vice versa): social casino game play as harm reduction?" 46 Journal of Gambling Issues 43 (2021).

18.    Companies in the social casino industry, including Defendant, have extracted tens of millions of dollars from New Jersey's economy in the last five years, all without adding anything to the economy of the state or paying a dime in taxes to New Jersey's treasury. Instead, the money extracted from New Jersey's economy ends up in not only in Defendant's home state of Delaware, but also to foreign countries like Hong Kong, Israel, Gibraltar, Australia, and Cyprus, where other major companies in the industry are headquartered. According to research on the industry as a whole, social casinos and sweeps casinos had estimated 2024 revenues of 7.1 billion and 10.6 billion, respectively. https://kpmg.com/kpmg-us/content/dam/kpmg/pdf/2025/sweepstakes-gaming-emerging-industry-primer.pdf. The last report showing Zynga's annual revenue was issued for Financial Year 2021 and showed a total revenue of 2.8 **billion** dollars. https://www.businesswire.com/news/home/20220209005205/en/Zynga-Announces-Fourth-Quarter-and-Full-Year-2021-Financial-Results. Even if New Jersey consumers represent but a small percentage of that total, the reality is that a great deal of money is being siphoned from the state's economy each year.

## CLASS ALLEGATIONS

19.    Plaintiff seeks to certify and represent a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The class sought to be certified is defined as follows:

> All New Jersey residents who spent money on Zynga's gambling applications (including Wizard of Oz Slots, Hit it Rich, Game of Thrones Slots, Black Diamond Casino and Willy Wonka Casino) within the applicable statute of limitations for each of the class claims set forth below and continuing to a date to be set by the Court following certification. All employees of the Court and plaintiff's counsel, and their families, are excluded.

20.    This class action satisfies the numerosity requirement of Rule 23(a)(1) because joinder of all members of the plaintiff class is impracticable. There are thousands of New Jersey residents who are members of the class.

21.    This class also satisfies the commonality requirement of Rule 23(a)(2) because there are central questions of fact and law that are common to the class. Such common questions include, at a minimum, (a) whether Zynga's games are games of chance; (b) whether free play is a thing of value under New Jersey law; (c) whether Zynga's games constitute illegal gambling under New Jersey law; (d) whether class members are entitled to recover their losses pursuant to Section 2A:40-5 of the New Jersey Revised Statutes; (e) whether Zynga represented on its website, in its terms and conditions, or in advertisements that its gambling games are legal in New Jersey; (f) whether such misrepresentations constitute deceptive trade practices

under New Jersey law; (g) whether Zynga was unjustly enriched by its illegal activities; (h) whether Zynga's terms of service are unenforceable under federal law because they set forth the terms and conditions under which illegal gambling under federal law occurs; and (i) whether Zynga's terms of service, and the arbitration agreement and delegation clause contained therein, are each void under New Jersey law.

22.     The proposed class satisfies the typicality requirement of Rule 23(a)(3) because the named plaintiff's claims are typical of the claims of the class members. Both plaintiff and the class members lost money in an effort to win additional playing time and amusement on these illegal gambling games.

23.     The named plaintiff will fairly and adequately represent the interests of the class pursuant to Rule 23(a)(4). Plaintiff has no interests that conflict with the interests of the class. Furthermore, plaintiff has retained competent and experienced counsel with decades of experience litigating class cases.

24.     Plaintiff seeks certification of the class pursuant to Rule 23(b)(3), which allows class treatment of a claim where:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

25.    The common questions of law and fact in this case vastly predominate over any individual issues affecting only individual class members. The only individual issue presented by these class members is the exact amount of money damages to which each class member is entitled. Such damages issues are routinely held not to predominate over common questions in cases like this. Indeed, the individual damages issues can be quickly and accurately resolved by examining Zynga's own records.

26.    Class treatment is by far superior to individual litigation as a fair and efficient way to adjudicate this controversy. Given the relatively small individual amounts at issue, it is unlikely that there would be any adjudication of the class claims in this case at all.

27.    For this reason, none of the class members have any interest in controlling the prosecution of separate actions. Likewise, to our knowledge, no class member has commenced a pending action concerning this controversy.

28.     It would be much more desirable to concentrate this case in one action rather than allow the prosecution of individual actions because, as noted, such individual actions would likely never be filed because class members would be unlikely to have any motivation to file an individual suit.

29.     Plaintiff's counsel foresee no particular difficulties in managing this case as a class action because all of the necessary information to compensate the individual class members is contained in Zynga's own records concerning users' purchases and in the records of the platforms that facilitate the service. Defendant and the platforms it uses to provide the games keep extensive records which will demonstrate not only the aggregate amounts lost by players in New Jersey, but the identities of the individual players and the amounts of their individual losses. This information is easily ascertainable in discovery.

**ZYNGA'S GAMES VIOLATE NEW JERSEY AND FEDERAL LAW**

30.     Unregulated gambling is illegal in New Jersey, and there is a strong public policy against unregulated gambling in this state. The state's strong public policy against gambling includes a statutory right of persons who lose money or other things of value on illegal gambling to recover their money or thing of value.

31.     Zynga's games are illegal in the state of New Jersey. Section 2A:40-1 of the New Jersey Revised Statutes outlaws all gambling outside of what is specifically authorized by the Casino Control Act:

All wagers, bets or stakes made to depend upon any race or game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event, shall be unlawful.

N.J.R.S. § 2A:40-1.

32.    New Jersey law defines gambling as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the actor's control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome." N.J.R.S. § 2C:37-1(b).

33.    The New Jersey Supreme Court has long held that the ability to play for free is a thing of value under New Jersey gambling law. See Hunter v. Mayor & Council of Teaneck Tp., 24 A.2d 553 (N.J. 1942).

34.    When players risk virtual coins that they paid money for on the outcome of a spin of the reels in Zynga's slot machine games, hoping to win more money or additional playing time, they are gambling under New Jersey law, because they are staking something of value on a future contingent event not under the player's control. Zynga has never argued that a player can affect the outcome of the game through skill.

35.    Because the gambling games are illegal in New Jersey, when such games are played in New Jersey, they are also illegal under federal law pursuant to 18 U.S.C. § 1955, as more fully set forth in Count One below.

## CLAIMS FOR RELIEF

## COUNT ONE: SEEKING A RULING THAT THE GAMBLING IS ILLEGAL UNDER FEDERAL LAW, MAKING DEFENDANT'S TERMS OF SERVICE UNENFORCEABLE IN FEDERAL COURT

36. Plaintiff incorporates the factual and legal averments of Paragraphs 2-35 by reference as if fully set forth in this count.

37. Plaintiff seeks, on behalf of himself and the class, a determination that:

a. Zynga's conduct in New Jersey with respect to the games at issue is an "illegal gambling business" under 18 U.S.C. § 1955;

b. The "Terms of Service" found in Zynga's apps, (also available at https://www.take2games.com/legal/en-US/) set out the terms and conditions under which Zynga's illegal gambling is conducted; and

c.       The Terms of Service are unenforceable in federal court.

38. The relevant language of 18 U.S.C. Section 1955 states:

**(1)** "illegal gambling business" means a gambling business which—

**(i)** is a violation of the law of a State or political subdivision in which it is conducted;

**(ii)** involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

**(iii)** has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

28 U.S.C. § 1955(b)(1).

39.     As to the first element required to find an illegal gambling business, under section 1955, Zynga's games are in fact illegal gambling under New Jersey law because they users risk something of value (virtual coins they paid real money for) for something of value (additional amusement) on a contingent future event which they cannot control the outcome of.

40.     As explained above, New Jersey law bans all bets or stakes made to depend upon a game of chance, outside of gambling explicitly authorized by the Casino Control Act. N.J.R.S. § 2A:40-1.

41.     As to the second element under Section 1955, Zynga certainly employs more than 5 persons who conduct, finance, manage, supervise, direct or own all or part of its business.

42.     The third element of Section 1955 is also met. Zynga has both been in business for more than 30 days in New Jersey, and has had gross revenue of more than $2000 in a single day. Zynga has conducted business in New Jersey for multiple years, and has collected gross revenue of more than $2000 in a single day on multiple occasions.

43.     Because all three elements of Section 1955 are met, Zynga's conduct in New Jersey constitutes an illegal gambling business, and plaintiff's first request for a legal ruling is due to be granted.

44.    The second request for a legal determination should also be granted. The "Terms of Service" found in Zynga's apps, do in fact set out the terms and conditions under which the illegal gambling thereon is conducted. Plaintiff expects Zynga will challenge the words "illegal" and "gambling" in this request, but will likely not dispute the fact that its terms and conditions govern the operation of the games and all of the activity it conducts in New Jersey.

45.    Because the contract, as described above, is illegal pursuant to federal law, namely 18 U.S.C. § 1955, federal courts, pursuant to United States Supreme Court precedent, are not permitted to enforce the contract in aid of such illegal activity. See Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 84 (1982), which held:

> It is . . . well established . . . that a federal court has a duty to determine whether a contract violates federal law before enforcing it. "The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in . . . federal statutes. . . . Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power."

(quoting Hurd v. Hodge, 334 U.S. 24, 34-35 (1948)).

46.    Under this long-established principle, because defendant's terms are illegal and void in New Jersey, this Court cannot enforce the terms to send this case to arbitration.

**COUNT TWO: SEEKING A RULING THAT DEFENDANT'S TERMS OF SERVICE AS A WHOLE , THE ARBITRATION PROVISION ITSELF,**

## AND THE DELEGATION PROVISION THEREIN ARE EACH VOID UNDER NEW JERSEY LAW

47.    Plaintiff incorporates the factual and legal averments of Paragraphs 2-46 by reference as if fully set forth in this count.

48.    As set forth above, defendant's games are governed by terms of service that facilitate the illegal gambling. The terms of service are therefore void pursuant to Section 2A:40-3 of the New Jersey Revised Statutes, which states that "[a]ll promises, agreements, notes, bills, bonds, contracts, judgments, mortgages, leases or other securities or conveyances which shall be made, given, entered into or executed by any person, the whole or part of the consideration of which is for any money, property or thing in action whatsoever laid, won or bet in violation of section 2A:40-1 of this title, or for reimbursing or repaying any money knowingly lent or advanced to help or facilitate such violation, shall be utterly void and of no effect."

49.    Zynga's terms and conditions also contain provisions within the arbitration agreement that exist in aid of the illegal gambling conduct, and are thus void and unenforceable. For example, the terms attempt to prevent Zynga's customers from both arbitrating any dispute concerning "relief respecting any person other than the specific party to the Dispute." While this provision is not particularly clear, Plaintiff believes Zynga would interpret it to bar any claim pursuant to Section 2A:40-6 of the New Jersey Revised Statutes, which explicitly allows for the recovery of the losses of other parties. Thus, the provision attempts to exculpate Zynga from

the clear consequences of its intentional illegal activity in New Jersey. See https://www.take2games.com/legal/en-US/ at 17.5(3).

50.    Zynga's terms also contain a provision that purports to delegate to the arbitrator "all threshold arbitrability issues, including related to whether the Agreement or Arbitration Agreement are unconscionable or illusory; whether the Arbitration Agreement has been disaffirmed under applicable law; and any defense to arbitration including waiver, delay, laches or estoppel." https://www.take2games.com/legal/en-US/ at 17.5(1). This provision is also in aid of the illegal conduct. Under United States Supreme Court precedent a contractual delegation clause like this one cannot take away from the Court the power to determine whether the contract, including the delegation clause, is void under New Jersey law because it is based on a gambling consideration. Coinbase, Inc. v. Suski, 602 U.S. 143, 151 (2024) (noting that "where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge.") (citing Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 71 (2010)).

51.    Plaintiff seeks, on his own behalf and on behalf of the class, a determination that Zynga's terms of service, and, separately, the arbitration agreement and delegation clause contained therein, are each void under New Jersey law.

## COUNT THREE: SEEKING A RULING THAT DEFENDANT'S TERMS OF SERVICE VIOLATE THE JAMS MINIMUM STANDARDS AND THE EFFECTIVE VINDICATION DOCTRINE

52.     Plaintiff incorporates the factual and legal averments of Paragraphs 2-51 by reference as if fully set forth in this count.

53.     Plaintiff and the members of the class are ostensibly subject to an arbitration agreement, which, as explained in Count Two, is void under New Jersey law. This purported arbitration agreement names Judicial Arbitration and Mediation Services (JAMS) as the arbitration forum.

54.     JAMS has promulgated "Minimum Standards for Arbitration Procedures" for use in consumer arbitrations, which are available online at https://www.jamsadr.com/consumer-minimum-standards/ (last accessed August 28, 2025). Principle 3 of these Minimum Standards states that "[r]emedies that would otherwise be available to the consumer under applicable federal, state or local laws must remain available under the arbitration clause, unless the consumer retains the right to pursue the unavailable remedies in court." https://www.jamsadr.com/consumer-minimum-standards/ (last accessed August 28, 2025).

55.     The United States Supreme Court has a held that arbitration agreements written to prevent a party from pursuing statutory remedies are invalid. American Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 235 (2013) (citing, inter alia,

Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991)).

56.    The Italian Colors court, while holding that the exception did not apply to the case at bar, stated in strong terms that the effective vindication doctrine "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." 570 U.S. at 236.

57.    Zynga's Terms of Service contain precisely such a provision, purporting to forbid the assertion of certain statutory rights in arbitration and litigation. For example, the terms attempt to prevent Zynga's customers from arbitrating or litigating any claim concerning the losses of third parties, a statutory right directly authorized by Section 2A:40-6 of the New Jersey Revised Statutes.

58.    These provisions of Zynga's Terms of Service, including but not limited to the prohibition on actions for the recovery of the losses of third parties and private attorney general actions, run directly afoul of the JAMS minimum standards and the effective vindication doctrine set forth by the United States Supreme Court.

59.    Plaintiff, on behalf of himself and the class, seeks a determination that provisions in Zynga's Terms of Service that prevent customers from effectively vindicating statutory rights are void and unenforceable.

## COUNT FOUR: CLASS CLAIMS FOR INDIVIDUAL LOSSES

60.    Plaintiff incorporates the factual and legal averments of Paragraphs 2-59 by reference as if fully set forth in this count.

61.    The New Jersey Revised Code provides a statutory civil cause of action to recover money paid and lost due to gambling. Section 2A:40-5 provides:

> If any person shall lose any money, goods, chattels or other valuable thing, in violation of section 2A:40-1 of this title, and shall pay or deliver the same or any part thereof to the winner, or to any person to his use, or to a stakeholder, such person may sue for and recover such money, or the value of such goods, chattels, or other valuable thing, from such winner, or from such depositary, or from such stakeholder, whether the same has been delivered or paid over by such stakeholder or not, in a civil action provided such action is brought within 6 calendar months after payment or delivery.

NJRS. § 2A:40-5.

62.    On behalf of himself and all others similarly situated, William Barbarino seeks for each class member recovery of the amount paid through purchases on Zynga's websites within the six months preceding the filing of this complaint minus any amounts that player was actually paid back as a result of winnings, pursuant to Section 2A:40-5 of the New Jersey Revised Statutes.

## COUNT FIVE: INDIVIDUAL CLAIM FOR THIRD PARTY LOSSES

63.    Plaintiff incorporates the factual and legal averments of Paragraphs 2-62 by reference as if fully set forth in this count.

64.     After the six-month period during which the losing gambler may recover his or her money, the New Jersey Revised Statutes provides that any person may then sue and recover the losses:

> If the person who shall lose and pay such money, or lose and deliver such thing or things as aforesaid, shall not, within the time aforesaid, without collusion, sue for the money or other thing or things so lost and paid, or delivered, any other person may sue for and recover the same, with costs of suit, from such winner, depositary or stakeholder as aforesaid; the one moiety thereof to the use of the person suing for the same, and the other moiety to the use of the state; provided the action is instituted within 6 calendar months from and after the expiration of the time limited in section 2A:40-5 of this title for the loser to sue for the same.

NJRS § 2A:40-6.

65.     Pursuant to Section 2A:40-6 of the New Jersey Revised Statutes, William Barbarino   claims, on his own behalf, the total of the net losses by purchasers of virtual currency on Zynga's gambling apps that occurred more than six months prior to the filing of this complaint that are not, for any reason, recoverable by the class pursuant to counts five and six.

## COUNT SIX: CLAIMS FOR VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

66.     Plaintiff incorporates the factual and legal averments of Paragraphs 2-65 by reference as if fully set forth in this count.

67.     The New Jersey Consumer Fraud Act, contained in Title 56 of the New Jersey Revised Statutes forbids, among other things, "any unconscionable

commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression or omission, in connection with the sale or advertisement of" any goods or services. NJRS 56:8-2.

68. Zynga offers the gambling games to the public in New Jersey, implicitly representing that they are legal in the state. Furthermore, the terms and conditions expressly state that "This Agreement is a legal contract," when, in reality it is void and unenforceable in New Jersey because it rests on a gambling consideration. N.J.R.S. § 2A:40-3.

69. Zynga's insistence that the games are legal and the contract is binding violates the New Jersey Consumer Fraud Act because it is deceptive to consumers, and because it is a representation that a good or service has characteristics or standards that it does not have.

70. The New Jersey Consumer Fraud Act provides a private right of action, allowing consumers to recover money lost to deceptive practices, along with treble damages, attorneys' fees, and costs. NJRS § 56:8-19.

71. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adopting the class allegations found in Paragraphs 19-29 above, Plaintiff seeks to recover for the class all money lost by a class of persons who played Zynga's illegal gambling games during the six-year statute of limitations of the Consumer Fraud Act.

## PRAYER FOR RELIEF

Pursuant to the legal and factual averments above, Plaintiff respectfully asks this court to:

1. Take jurisdiction of this cause;

2. Following discovery, certify counts one, two, three, four, and six of this complaint as a class action pursuant to Rule 23(b)(3);

3. Appoint the undersigned as Class Counsel and the named plaintiff as class representative;

4. Enter a final judgment declaring that Zynga's games, when played in New Jersey, constitute an "illegal gambling business" under 18 U.S.C. § 1955;

5. Enter a final judgment declaring that the gambling is conducted pursuant to the terms and conditions in Zynga's apps, and that these contracts are void under New Jersey law and cannot be enforced;

6. Enter a final judgment against Zynga awarding plaintiff and the class members a refund of money spent on Zynga's illegal gambling games in the period between six months prior to the complaint and the entry of judgment under New Jersey's gambling loss recovery statute;

7. Enter a final judgment against Zynga awarding plaintiff and the class members a refund of their losses, trebled, unrecovered under count three,

during the period between six years prior to the filing of the complaint and the entry of judgment, pursuant to the New Jersey Consumer Fraud Act;

8. Enter a final judgment against Zynga awarding to plaintiff the amount of all money lost in Zynga's illegal gambling games by New Jersey residents during the period between one year prior to the filing of the complaint and six months prior to the filing of the complaint, to the extent that such losses have not been recovered under counts four and six;

9. Award Class Counsel reasonable attorneys' fees and expenses to be paid from the common fund judgment in favor of the class;

10. Award the named plaintiff a reasonable sum of money for her services in this case on behalf of the class, also to be paid out of the judgment in favor of the class;

11. Award interest and costs; and

12. Award any other relief to which the Court finds plaintiff and the class are entitled.

Respectfully submitted this 29th day of October, 2025,

/s/      Nicholas Conlon
Nicholas Conlon
**Attorney for Plaintiff Sharon King**

**COUNSEL:**

Nicholas Conlon
Jason T. Brown
Brown, LLC
111 Town Square Pl. #400
Jersey City, NJ 07310
Telephone: 877.561.000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

Dargan M. Ware (*pro hac vice* anticipated)
John E. Norris (*pro hac vice* anticipated)
DAVIS & NORRIS, LLP
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
dware@davisnorris.com
jnorris@davisnorris.com